96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael BIKO; Tracey Whittington-Biko, Plaintiffs-Appellants,
v.
IMMIGRATION & NATURALIZATION SERVICE, Defendant-Appellee.
 No. 95-3851.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1996.
 
 Before: MARTIN, KRUPANSKY, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is the appeal of a district court's denial of an application for attorney's fees pursuant to the attorney's fees provision of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).
 
 
 2
 Michael Biko is a nonresident alien residing in Columbus, Ohio. He came to the United States in 1988 on a visitor's visa which expired not long after he arrived. In 1989, Biko married a United States citizen who filed a petition shortly after their marriage to classify Biko as an immediate relative. Biko filed for an adjustment of his status to that of a permanent resident alien at the same time. The government failed to adjudicate either petition for over three years, and eventually denied the relative petition after learning that Biko and his first wife had divorced.
 
 
 3
 The government initiated deportation proceedings against Biko in January of 1993, at which time he filed an application for placement in the deferred action program. The government failed to act on that application as well. Later in 1993, Biko married his second wife, Tracey Whittington-Biko. Whittington-Biko is a United States citizen who filed a new relative petition on behalf of Biko on May 13, 1993. Although such petitions are typically processed within thirty to sixty days,[1] the government failed to act on Whittington-Biko's petition for many months.
 
 
 4
 On January 24, 1994, Biko and Whittington-Biko filed this action in federal district court seeking declaratory, injunctive and compensatory relief from the Immigration and Naturalization Service. Although the Service had interviewed the plaintiffs in September of 1993, it still had not adjudicated their relative petition prior to the filing of this action. In their complaint, the plaintiffs alleged that the Immigration and Naturalization Service was violating their due process rights by failing to adjudicate Whittington-Biko's relative petition. Biko and Whittington-Biko also sought injunctive relief to restrain an immigration judge from proceeding with Biko's deportation hearing until the Immigration and Naturalization Service adjudicated his wife's relative petition. The plaintiffs first filed a motion for a temporary restraining order to prevent the holding of the deportation hearing. When the Immigration and Naturalization Service subsequently agreed to seek a continuance of the hearing, the court declined to grant the temporary restraining order. The plaintiffs later moved for a preliminary injunction to stay the deportation proceedings until Whittington-Biko's relative petition was adjudicated.
 
 
 5
 In March of 1994, after requesting help from their Congressman, the plaintiffs learned that the relative petition was awaiting further information from the State Department. In May of 1994, the government requested Biko's birth certificate for the first time, and the plaintiffs set about attempting to procure it through the South African consulate.[2] The Immigration and Naturalization Service claimed it needed the birth certificate to process the relative petition in light of the fact that, in 1978, Biko had entered this country under a different identity. The plaintiffs had been unaware that they needed to submit Biko's birth certificate because instructions on the relative petition form did not mention any requirement that a birth certificate be submitted with the relative petition.
 
 
 6
 On July 21, 1994, the district court held a hearing on the plaintiffs' request for a preliminary injunction. The Immigration and Naturalization Service did not present any testimony or evidence during the hearing, but claimed that the reason for the lengthy delay in adjudicating Whittington-Biko's petition was that the petition did not include Biko's birth certificate. The plaintiffs had not submitted Biko's birth certificate prior to the hearing, nor did they after the hearing. At the hearing the government promised to refrain from executing any deportation warrant until Whittington-Biko's relative petition was adjudicated. Based on this assurance, the district court denied the plaintiffs' motion for a preliminary injunction. In a Memorandum and Order dated July 27, 1994, the district court stated:
 
 
 7
 Based on the present record, the Court cannot find that plaintiffs have shown a strong or substantial likelihood of success on the merits. While the earlier handling of [Biko's first wife's] immediate relative petition may well have risen to the level of a due process violation, the Court cannot equate that seemingly unreasonable delay with the delay encountered with the current relative petition. The testimony and exhibits offered by plaintiffs did establish that the current relative petition, pending for more than a year, has yet to be adjudicated, notwithstanding the fact that such petitions normally are processed in thirty to sixty days. However, the testimony of plaintiffs on cross-examination also brought out the fact that defendant INS has interviewed the couple and has requested certain documents, including plaintiff Biko's birth certificate, to verify plaintiff Biko's identity. In light of plaintiff Biko's admission that he entered this country under a different identity in 1978, the Court cannot find INS's request for the birth certificate to be unreasonable despite plaintiffs' counsel's contention that a birth certificate is not needed to process the immediate relative petition but only to determine plaintiff Biko's petition for an adjustment of status once the relative petition is approved.
 
 
 8
 Since plaintiff Biko (apparently through no fault of his own) has yet to obtain a copy of his birth certificate, plaintiffs have not shown a substantial likelihood that the failure of defendant to adjudicate the petition more than a year after its submission constitutes a violation of their due process rights. Once the requested documentation is provided, however, defendant INS is under a duty to process the relative petition within a reasonable period of time. Should this not occur, plaintiffs are free to renew their motion.
 
 
 9
 (J.A. at 23-24).
 
 
 10
 On August 5, 1994, two weeks after the preliminary injunction hearing, the Immigration and Naturalization Service approved Whittington-Biko's relative petition. Deportation proceedings pending against Biko were closed on September 23, 1994. The district court dismissed this action at Biko and Whittington-Biko's request on October 26, 1994.
 
 
 11
 On November 28, 1994, and again on January 3, 1995, Biko and Whittington-Biko filed an application for attorney's fees pursuant to Section 2412(d)(1)(A) of the Equal Access to Justice Act. The district court denied the application for fees on June 12, 1995. Although the court found that the plaintiffs qualified as "prevailing parties," it concluded that the government's position was "substantially justified" under 28 U.S.C. § 2412(d)(1)(A), and that an award of fees was therefore unwarranted. This appeal followed.
 
 
 12
 On appeal, the plaintiffs claim that the district court erred in finding that the government's position regarding Whittington-Biko's relative position was reasonable and thus substantially justified. They contend that the government's position was not substantially justified because of the length of time that it took the Immigration and Naturalization Service to adjudicate the relative petition. The government, of course, contends that the district court properly held that its position was substantially justified.
 
 
 13
 We review an award or denial of attorney's fees under the Equal Access to Justice Act for an abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 559 (1988). The Equal Access to Justice Act sets forth three criteria that must be met before an award of attorney's fees and costs may be granted: (1) the fees must be incurred in a civil action brought against the government; (2) the party seeking fees must have been the prevailing party; and (3) the government's position must not have been substantially justified. 28 U.S.C. § 2412(d)(1)(A); Delta Eng'g v. United States, 41 F.3d 259, 261 (6th Cir.1994).
 
 
 14
 It is undisputed that the plaintiffs "prevailed" in their civil action against the government. The sole issue in this case then is whether the district court abused its discretion in finding that the government's position was "substantially justified." To be "substantially justified," the government's position must be " 'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person." Pierce, 487 U.S. at 565. In other words, there must have been a "reasonable basis both in law and fact" for the government's position. Id. The "position" of the government "comprehends both the United States' underlying action and its litigation position." Delta Eng'g, 41 F.3d at 261; 28 U.S.C. § 2412(d)(2)(D) (stating that the "position of the United States" means both its position in the civil action and the agency's action or failure to act upon which the civil case is based). The government bears the burden of showing that its position was "substantially justified." Jones v. Lujan, 887 F.2d 1096, 1098 (D.C.Cir.1989).
 
 
 15
 The government's position in this case was that: (1) an alien who is in deportation proceedings, who subsequently marries an American citizen who then files a relative petition on the alien's behalf, has no legal basis to enjoin deportation proceedings from going forward pending adjudication of the relative petition and (2) the government was unable to adjudicate the relative petition without Biko's birth certificate. On appeal, the government claims that the district court's finding that its position was reasonable should stand for two reasons: (1) the government assured the court that, should the immigration judge find Biko to be deportable, the Service would not execute the warrant of deportation until it adjudicated the pending relative petition and (2) at the preliminary injunction hearing, the court determined that the Service's failure to adjudicate the relative petition for over a year likely did not constitute a due process violation in light of the fact that the Service was unable to obtain certain requested documents, including Biko's birth certificate.
 
 
 16
 In reaching its conclusion that the agency action in this case was substantially justified, the district court found that the absence of Biko's birth certificate was a reasonable cause for the delay which substantially justified the government's failure to act.[3] The court relied on its determination during the preliminary injunction hearing that the Immigration and Naturalization Service's failure to adjudicate the relative position for more than a year did not constitute a due process violation in light of the fact that the Service was unable to obtain Biko's birth certificate. The court also found the government's litigation position to be reasonable in light of the Service's assurance that it would not execute any deportation warrant until the pending relative petition was adjudicated.
 
 
 17
 We agree with the district court that, in light of the fact that Biko entered the United States under a different identity in 1978, the request for his birth certificate was reasonable. We further agree that the government's position was substantially justified both at the agency and district court levels. The district court found that the Immigration and Naturalization Service's position was substantially justified based on its inability to obtain certain requested documents and the fact that the government assured the court that it would not execute any deportation warrant until it adjudicated the pending relative petition. We find no abuse of discretion in the district court's determination that the government's position had a reasonable basis in both law and fact. The absence of Biko's birth certificate was a reasonable cause for the delay which substantially justified the government's failure to act. In addition, any concern about the government's opposition to staying the deportation proceedings until the relative petition was adjudicated was eviscerated when it agreed to refrain from executing a deportation warrant until the relative petition was adjudicated.
 
 
 18
 For the foregoing reasons, the district court's decision denying the plaintiffs' motion for attorney's fees and costs under the Equal Access to Justice Act is AFFIRMED.
 
 
 
 [1]
 According to a Notice of Receipt sent to the plaintiffs' lawyer by the Immigration and Naturalization Service, it generally takes one to two months to process a relative petition. J.A. at 182
 
 
 [2]
 According to Whittington-Biko's testimony during the preliminary injunction hearing, she and Biko received a letter from the Consulate after they requested Biko's birth certificate explaining that it could take three to four months to process their request. J.A. at 73
 
 
 [3]
 The district court's acceptance of the government's explanation for its delay in adjudicating the relative petition as reasonable was premised on the government's statement during the preliminary hearing that "[t]his is not a procedural due process violation. This is a lack of prosecution of their application.... we need to know who you are, and until that time, we get a birth certificate, there is no way to adjudicate this immediate relative petition." J.A. at 142. In its Memorandum and Order of July 27, 1994, the court stated that, "[o]nce the requested documentation is provided ... defendant INS is under a duty to process the relative petition within a reasonable period of time." J.A. at 24